## A. J. RADFORD AND JOSEPH WOOD v. W. A. LYON AND WIFE.

(Case No. 2120)

1. ARTICLE 2343, REVISED STATUTES, CONSTRUED—HOMESTEAD—In the designation of the homestead of a family, article 2343, Revised Statutes, applies only when the homestead forms a part of· a larger tract or tracts of land than is exempted from forced sale.

2. SAME—HOMESTEAD—HEAD OF FAMILY—MAY DEFINE, ·BUT NOT CONTRACT, HOMESTEAD LIMITS—This statute, in providing that " when the homestead of a family

is part of a larger tract or tracts of land than is exempted from forced sale, the exempt portion, not exceeding two hundred acres, may be designated," does not prescribe this as a means of cutting down the homestead to less than what the uses of the family have embraced in it, but as a means of marking the very lines to which the homestead uses have extended the homestead limits; and if the husband and wife make, under this law, a formal declaration that their homestead consists of a less number of acres than are exempted from forced sale, such declaration derives no force therefrom. The statute does not author-ize the head of the family to contract, but simply to define, the homestead.

3. IMPROPER SPEECH OF COUNSEL—WHEN CAUSE FOR REVERSAL—BILL OF EXCEPTION— Where the trial judge overrules a motion for new trial in a case in which coun-sel indulged in improper remarks in his speech to the jury, it may be assumed that the judge has concluded that no injurious results from such remarks have entered the verdict; and while the supreme court will revise this conclusion, yet, it will not reverse it unless the case is a plain one.

4. SAME—BILL OF EXCEPTION—When an exception of this kind is presented, the trial judge may very appropriately give the appellate court the benefit, in an *adden-dum* to the bill, of any fact or views, not otherwise disclosed by the record, supporting his conclusion that the complaining party has suffered no injury from the unauthorized remarks of counsel.

APPEAL from Burleson.    Tried below before the Hon. J. B. Mc-Farland.

The appellees, Lyon and wife, as plaintiffs below, brought this suit against Marx & Kempner and the appellants, Radford and Wood, to recover two tracts of land, one containing two and seventy-four one-hundredths acres, and the other twenty-four and eighty-four one-hundredths acres, claimed as part of the rural homestead of plaintiffs, and rents for their use and occupation.

On and prior to July 13, 1881, the plaintiffs, Lyon and wife, owned a number of tracts of land in Burleson county, including a tract called the "home block," containing, according to survey, one hundred and seventy-one and one-fourth acres, which includes the family residence and a field, and adjoins the town of Lyon, a station on the Santa Fe railway; a tract of one hundred and fifty acres, which includes the twenty-four and eighty-four one-hundredths acres and the mill and gin sued for and recovered by plaintiffs in this suit; three and one-third acres, less the railway company's right of way, say two and seventy-four one-hundredths acres, known as the "pil-low reservation," but adjoining the mill and gin tract mentioned above, and about three hundred yards distant from the resident tract. The mill tract also is about three hundred yards from the residence tract, and is separated from it by the Lyon town tract and the rail-way company's right of way.

The mill and gin were used by plaintiffs for ginning the cotton raised by them on their residence tract, and on their other farms in

Burleson county, as also for ginning cotton and grinding corn for the public in that vicinity.    On the smallest of these tracts (two and seventy-four one hundredths acres) there was a house and other improvements, which were used and occupied by the hands employed about the mill.

At the time of executing the trust deed, Lyon and wife claimed, as their homestead, the two tracts in controversy, and the tract of one hundred and seventy-one and one-fourth acres, distant about three hundred yards, upon which their residence and field were situated.

Lyon was indebted to Marx & Kempner in the sum of $240 or $250, and was desirous of obtaining from them a further line of credit, which they agreed to extend on plaintiffs' securing them by a deed of trust on their real estate.  Accordingly, on July 13, 1881, the plaintiffs, W. A. Lyon and wife, executed and delivered to J. W. Edmundson their deed, whereby they conveyed to him, in trust, a number of tracts of land, and among others the pillow reservation of two and seventy-four one-hundredths acres, and the tract of one hundred and fifty acres, on which were the mill and gin.

The deed concludes with a declaration to the effect that no part of the land conveyed is embraced in the homestead of the grantors, and declaring that their homestead consists only of the tract designated above as the home block, being the unsold balance of one hundred and eighty-one acres, more or less, of the three hundred acres purchased of McIver and Garrett.  It was duly executed by the grantors, Mrs. Lyon having been subjected to the necessary privy examination, and was duly recorded August 6, 1881.

A second deed of trust, between the same parties, embracing other lands, was executed August 6, 1881, and was duly recorded on August 18.    It also contained a similar provision designating as the homestead the one hundred and eighty-one acres remaining unsold of the Garrett & McIver tract.

The trustee was authorized to sell the lands so conveyed, on certain contingencies named in the deeds, which having happened, the lands were duly sold by the trustee, and the premises in controversy were bought by Marx & Kempner, who afterwards sold to the appellants.

The plaintiffs, in their pleadings, alleged that the execution of the deeds of trust by Mrs. Lyon was procured through fraud, and concealment of the fact that the gin and mill tract of twenty-four and eighty-four one-hundredths acres, and the pillow reservation, were embraced in the conveyance, and that the homestead was in terms limited and restricted to the tract on which the dwelling house was situated.    There was a conflict of testimony on the issue of fraud, but

by the charge the question was practically withdrawn from the jury, and the case was made to turn on other issues.

The survey, by which the gin and mill tract was segregated from the larger tract of which it formed a part, and by which its metes and bounds were first established, was made just before the institution of this suit, in May, 1883.

The appellants asked the court to charge the jury in substance:

1. That the husband alone is authorized to designate and set apart the homestead of the family—not to exceed two hundred acres in the country; that the signature and acknowledgment of the wife are not necessary to the validity of such designation, and that, without reference to Mrs. Lyon's signature and acknowledgment, the effect of the execution, by W. A. Lyon, of the two instruments of July 13, 1881, and August 6, 1881, and their record by the county clerk, was to withdraw from the homestead exemption the two tracts in controversy; that there being no allegation or proof that any fraud was practiced to procure the execution of the instruments by W. A. Lyon, and the instruments being in due form of law and valid to limit the homestead, and to exclude therefrom the premises in controversy, they should return a verdict for the defendants.

2. That the deeds of trust, of July 13, and August 6, 1881, both, contain a designation of the homestead as one hundred and eighty-one acres, which do not include the premises in controversy in this suit; and the designation so made having been duly recorded is conclusive against the plaintiffs, unless Mrs. Lyon's signature and acknowledgment thereto were procured by fraud.

The charges asked were refused, and the court charged the jury, instead, as follows:

" 8. The two deeds of trust offered in evidence cannot operate as a designation of the homestead of W. A. Lyon and wife, as provided for by the statute; and if, in fact, the lands in controversy, or any part thereof, constituted a part of the homestead of the plaintiffs, no declaration to the contrary contained in the deeds of trust, or either of them, can have the effect to relieve them of their homestead character; and if the jury believe, from the evidence, that the tracts sued for, or either of them, did in fact constitute a part of the homestead of the plaintiffs on July 13, 1881, then they will disregard any clause contained in either of the deeds, whereby it is declared that no part of the lands embraced in the deeds of trust constitute a part of the homestead of plaintiffs."

"10. The jury are the judges of the facts, of the weight of evidence and the credibility of the witnesses, and if you believe, from

the evidence as applied to the principles of law above given you, that either of the tracts sued for constituted a part of the homestead of the plaintiffs at the date of the first deed of trust to Edmundson, to-wit, on July 13, 1881, then the deed of trust was, to that extent, void, and Marx & Kempner acquired no title to such tract or tracts, by reason of their purchase at the trust sale, and you will find for the plaintiffs against Wood and Radford as to the tract or tracts so constituting a part of plaintiffs' homestead; and in such case it can make no difference whether Mrs. Lyon did or did not understand the true purport and meaning of the deed of trust at the time she executed it."

There was a trial by jury, resulting in a verdict for the defendants, Marx & Kempner, but in favor of the plaintiffs against the defendants, A. J. Radford and Joseph Wood, for the land in controversy and rents, and judgment was rendered accordingly. Counsel for plaintiffs, in his closing argument to the jury, animadverted somewhat severely upon the conduct of the trustee mentioned in the deeds from Lyon and wife to Marx & Kempner, to which remarks the defendants excepted and made this one of the grounds of their motion for new trial. The motion was overruled and defendants appealed.

*Sayles & Bassett*, for appellants, cited: R. S., 2343, 2344, 2345, 2355, 2365; Kent v. Beatty, 40 Tex. 440; Kellogg v. White, Galveston term, 1884; Ayers v. Schackey, Galveston term, 1884; McLane v. Paschal, 47 Tex. 372; Clark v. Nolan, 38 Tex. 420; C. T. & N. W. R'y Co. v. Hancock, Austin term, 1885.

*W. K. Homan* and *Sam G. Ragsdale*, for appellee, cited: R. S., 2343, 2344, 2345; Cook v. Dennis, 61 Tex. 246-249; Medlenka v. Downing, 59 Tex. 32; Jacobs, Bernheim & Co. v. Hawkins, 63 Tex. 3; R'y Co. v. Winter, 44 Tex. 597; Axer v. Bassett, 63 Tex. 545.

ROBERTSON, ASSOCIATE JUSTICE.—In the summer of 1881, the appellees formally executed two deeds of trust, each of which concluded as follows: "We, Wm. A. Lyon and wife, Louisa Lyon, do hereby declare that no part of the land described and conveyed by this deed of trust, constitutes any part of our homestead. That we will not make any claim to any part of the land as our homestead, or the homestead of either of us. We further declare that our homestead consists only and entirely of the land upon which we now reside, at and near Lyons, in Burleson county, Texas, being a balance remaining of one hundred and eighty-one acres of land, more or less, of that

tract of three hundred acres conveyed to Wm. A. Lyon by A. W. McIver and Lafayette Garrett, deed dated February 2, 1872, and recorded in book L, on pages 303, 304 and 305, of the records of deeds of Burleson county, Texas."

In the first of these deeds, the one dated July 13, 1881, was included the two small tracts of land in controversy. These two tracts were contiguous to each other, and across the railroad, and about three hundred yards from the tract upon which appellees resided. On the larger of the two small tracts was a mill and gin, used, at and before the execution of the deed of trust, in preparing for use and market the products of appellees' farms, and also for the service of the public. On the smaller tract was a house usually occupied by appellees' employes about the mill and gin. This use of the property continued after the execution of the deeds of trust until June 21, 1882, when the premises were let from that date until February 1, 1883, to W. P. Wood, who is not the defendant Wood.

It is not contended on this appeal that the land in controversy was not so used before the execution of the deeds of trust, at their dates and afterward, as to support the finding of the jury that it constituted a part of appellees' homestead, but it is claimed that the declartion contained in the deeds of trust is the authentic destination provided for by statute, and that its effect is to restrict the homestead right to the one hundred and seventy-one (called one hundred and eighty-one) acre tract. R. S., art. 2343. That statute provides that "when the homestead of a family, * * * is a part of a larger tract or tracts of land than is exempted from forced sale," the exempt portion, not exceeding two hundred acres, may be designated. It only applies when the homestead forms part of a larger tract or tracts of land. On appellants' theory, that appellees' homestead was confined to the one hundred and seventy-one acre tract, there could be no need of the statutory designation. This law does not authorize the head of the family to contract, but simply to *define* the homestead. It authorized Lyon to destinate what part of the three tracts embracing together more than two hundred acres, in each of which, by use, the homestead right had entered, should be the particular part exempt from forced sale. The chapter has special reference to execution sales. The husband and wife's power to encumber, and the husband's power to alienate, would be practically unrestricted, if he alone, or he and she together, could by registered declarations draw in, even to the door-step, the lines of protection. Indeed, if the homestead could be thus restricted, there is no reason why the first record should not embrace the house that shelters the family, and reserve only the shade

of a stunted oak in the part of the land the least desirable to creditors. The statute which would authorize a construction so destructive of a right so long cherished and jealously guarded in Texas jurisprudence, must admit of none other, and it would then encounter a line of constitutional objections.

If Lyon, or Lyon and wife, had made, under this law, a formal delaration that their homestead consisted of only the one hundred and seventy-one acre tract, it would have derived no force from the statute, because the statute does not prescribe this as a means of cutting down the homestead to less than what the uses of the family have embraced in it, but as a means of marking the very lines to which the homestead uses have extended the homestead limits.

Without the aid of the statute, the effect of such declaration has already been adjudicated by this court in Medlenka v. Downing, 59 Tex. 37, and other later cases. The charge given correctly stated the law and those requested by appellants were properly refused. The judgment for appellees for the land is complained of in no other particular.

The verdict for appellants for improvements we cannot say was too low. If the jury had adhered to what it seems was their purpose in the first informal verdict returned, and denied to appellants the value of their improvements entirely, the finding would have been well sustained by the proof. The testimony leaves it very uncertain what portion of the improvements made by appellants was made by them after they knew of the claims asserted by appellees. One of the defendants stated that the difference between the value of the land as they received it and its value at the date of the institution of the suit was $450, and he testified that the cotton press put on the land was put there after they had notice that their title was contested. If they were entitled to anything for improvements, the amount is too indefinitely proved to authorize us to hold that the jury's award is too small. The value of the rents assessed by the jury was excessive, but the sum to which the amount is reduced by the *remittitur* is a fair result of the evidence.

Counsel for appellee, in the closing speech, may have uttered a few sentences not entirely justified by the record, but they bare mainly on the issue of fraud in the execution of the deeds of trust, and that issue never reached the jury. The trial court is in a better position than we are to detect in the verdict any traces of the influence of the improper speech of counsel, and the rule that injurious results from this source should be prevented, if necessary, by a new trial, is now so well settled by the decisions of this court, that we may assume that

the district judge, when he overruled a motion for new trial, has
determined that no such results have entered the judgment.   We will
revise this conclusion, but to reverse it, the case must be a plain one.
It may here be remarked that when an exception of this kind is pre-
sented, the judge could very appropriately give this court the benefit,
in an *addendum* to the bill, of any fact or views not otherwise disclosed
by the record, supporting his conclusion that the complaining party
has suffered no injury from the unauthorized remarks of counsel.

The appellees, having recovered the land, were clearly entitled to
recover the value of the use and occupation, and the sum for which,
after the *remittitur*, the judgment was entered was not excessive.

The judgment must be affirmed.

                                                      AFFIRMED.

[Opinion delivered February 16, 1886.]