**BAYLESS v. GUTHRIE et al. (No. 258–3474.)**

(Commission of Appeals of Texas, Section B. Dec. 14, 1921.)

**1. Homestead ⊚⇒57(3)—Evidence held to prove mortgaged land mortgagor's homestead.**

In an action to foreclose mortgage involving validity of mortgage' as against defense that land was mortgagor's homestead, evidence that mortgagor and his wife were residing upon and using the property in all respects as their home, and that mortgagor had conveyed, by an instrument in the form of an unconditional deed, land previously occupied, *held* to prove the property mortgagor's homestead, notwithstanding representation to mortgagee that such other land previously occupied and not the property being mortgaged was his homestead.

**2. Homestead ⊚⇒154—Abandonment not affected by mere intention.**

Homestead rights are not abandoned by mere intention, but the intention must be accompanied by a discontinuance of the use of the property as a homestead.

**3. Homestead ⊚⇒115(2) — On mortgagor's homestead void.**

A mortgage on mortgagor's homestead being used by him as such at time of execution of mortgage is void.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by M. E. Guthrie, for whom Athlena Long was substituted, against Willis Bayles.; and another. Judgment for plaintiff affirmed by the Court of Civil Appeals, (218 S. W. 131) and named defendant brings error. Judgment of the District Court and the Court of Civil Appeals reformed.

Price & Beaird, of Tyler, for plaintiff in error.

Hanson & Butler, of Tyler, for defendants in error.

POWELL, J. The nature and result of this litigation are splendidly stated by the Court of Civil Appeals as follows:

"This action was originally filed by Mrs. M. E. Guthrie against Sam Wilson and the appellant Bayless. Before the trial Mrs. Guthrie died; and Athlena Long, her sole surviving heir, was substituted as a party plaintiff, and continued the prosecution of the suit. The petition sought a recovery upon a promissory note for the sum of $150, dated September 30, 1913, and due March 29, 1915, together with the interest and attorney's fees. It also asked for the foreclosure of a mortgage upon a lot in the city of Tyler which it is alleged was executed by Wilson for the purpose of securing the payment of the note. In a trial before the court a judgment was rendered in favor of the plaintiff against Wilson for the principal of the note, together with interest and attorney's fees, and awarding a foreclosure of the mortgage lien upon the lot referred to. Bayless asserts title to the property in controversy by virtue of a purchase from Wilson and wife in February, 1914, and appeals from the judgment of foreclosure. He contends that the property was Wilson's homestead at the time it was mortgaged to M. E. Guthrie, and that for that reason the effort to incumber it for borrowed money was void.

"The court filed findings of fact and conclusions of law. The following is the substance

of the evidence that is material to be considered on this appeal: The lot involved in this suit formerly belonged to Sam Wilson's father and mother, and had been occupied by them as the family residence. In December, 1912, the mother died, leaving her husband, Julius Wilson, and her only child, Sam Wilson, surviving. In July, 1913, Julius Wilson conveyed his undivided half interest in the property to his son Sam, thus investing the latter with a fee-simple title to the entire lot. Sam Wilson and wife were with Mrs. Wilson, Sr., at the time of her death, and thereafter continued to occupy the premises as their place of residence until it was sold by them to Bayless in 1914. They were thus occupying and using it at the time this mortgage to Guthrie was executed, and that fact was well known to Guthrie. When the mortgage was prepared Wilson stated to M. E. Guthrie that this lot was not his homestead, that he claimed as his home another lot in another part of the city of Tyler, on which he and his wife had formerly resided, and which he had rented to other parties at the time he left it, about 11 months prior to his mother's death. For the purpose of inducing Guthrie to take the mortgage and make the loan Wilson caused the following to be inserted in the deed of trust: 'Said property is not my homestead or any part thereof.'"

The Court of Civil Appeals affirmed the judgment of the district court. See 218 S. W. 131.

[1] We think the property in suit was shown to have been Wilson's homestead, and that the mortgage thereon was void. We have carefully read the statement of facts, and the circumstances shown therein constitute the property in controversy, in fact and in law, the homestead of Wilson at the time of the execution of the mortgage now sought to be foreclosed.

The Court of Civil Appeals, among other findings of fact, finds thus:

"It conclusively appears that at the time this mortgage was executed Wilson and his wife were residing upon and using this property in all respects as their home."

That finding conclusively constitutes the property a homestead, especially since the actual facts in evidnece show that this particular property was exclusively used as a homestead at said time.

The Supreme Court of Texas, to its everlasting glory, has repeatedly and most vigorously held that actual, open, and exclusive possession and use of certain property, owned by the possessors, as the home of the family, make it a homestead in fact and in law, and lenders of money must take notice thereof. We refer to a few striking passages from some of the decisions of our Supreme Court, in this connection, as follows:

In the case of Loan Co. v. Blalock, 76 Tex. 85, 13 S. W. 12, Chief Justice Stayton lays down the following rules:

"The fact of actual possession and use as the home of the family was one against which

the lender could not shut its eyes; and this fact, coupled with the interest held by the borrower in the land, made the property homestead in fact and in law, on which the Constitution declares no lien such as claimed in this case can exist.

"Every person dealing with land must take notice of an actual, open, and exclusive possession, and where this, concurring with interest in the possessor, makes it homestead, the lender stands charged with notice of that fact, it matters not what declarations to the contrary the borrower may make. * * *

"The Constitution forbidding the fixing on the homestead of liens other than such as are thereby expressly permitted, no estoppel can arise in favor of a lender who has attempted to secure a lien on homestead in actual use and possession of the family, based on declarations of the husband and wife made orally or in writing contrary to the fact. To hold otherwise would practically abrogate the Constitution.

"If property be homestead in fact and law, lenders must understand that liens cannot be fixed upon it, and that declarations of husband and wife to the contrary, however made, must not be relied upon. They must further understand that no designation of homestead contrary to the fact will enable parties to evade the law and incumber homesteads with liens forbidden by the Constitution. Mortgage Co. v. Norton, 71 Tex. 683; Pellat v. Decker, 72 Tex. 581; Kempner v. Comer, 73 Tex. 203."

We quote from the same eminent jurist in case of Jacobs v. Hawkins, 63 Tex. 1, as follows:

"Where * * * property is actually in use for homestead purposes, neither the declaration of the husband or wife, or both, can change its character. Medlenka v. Downing, 59 Tex. 40."

Again, from the case of Kempner Blum v. Comer, 73 Tex. 196, 11 S. W. 194, we quote:

"Dial and wife owned and occupied a certain rural homestead at the time the deed of trust was executed; their designation of only a part of it with other land not used by them as a home was correctly decided by the lower court to be invalid. Their disavowal of their actual homestead in order to mortgage it, or a part of it, for debt would be contrary to law, and could not be allowed. Their enunciation, and that of Comer and Fairris and their wives, furnish an illustration of the distinction the law makes in disclaiming an actual homestead and one merely designated; the latter will hold good, the former will not."

In the case of Hines v. Nelson, 24 S. W. 541, Justice Fly discusses the questions at issue in a very able manner. He says that—

"The constitutional test of a homestead is the use of it for the purposes of a home."

We quote further from him in said case as follows:

"There could not be two homesteads, and the one actually used and occupied as such must be the only existing one. Where the head of

a family has no homestead, and shows by declaration, ownership, and preparation, or other circumstances, that he intends to dedicate a certain property to homestead purposes, it must be given effect; but when a homestead has been actually dedicated, and is actually occupied as a home, the improvement of another place, accompanied with the declaration of intention to make the latter place the homestead, cannot divest the actual home of its homestead character in the face of the fact of occupancy and all other accompanying circumstances that go to make a homestead."

[2] Wilson owned in fee simple the property in suit. He and his family were actually using it as a home. It was his existing homestead. That character could not be detached from it by a mere intention to have another home anywhere later. Homestead rights are not abandoned by mere intention, but the latter feature must be accompanied by a discontinuance of the use of the present property as a homestead. This was declared to be the law by the Supreme Court of our state in early days. See Archibald v. Jacobs, 69 Tex. 248, 6 S. W. 178. In the case at bar, the facts show that Wilson had not discontinued his use of the property in suit as a homestead when the mortgage in question was executed. Therefore it could not well be said that he had abandoned the property in suit as a homestead in favor of property he had formerly used as a homestead, but which he did not even own at the time the mortgage in suit was executed. It is true that the district court in the case at bar found that the deed which Wilson had executed, conveying his former homestead, was in fact a mortgage, although in its terms an unconditional deed. However, this conclusion of the trial court in the case at bar was upon an ex parte hearing upon this issue, and, to say the least of it, Wilson would doubtless have had a considerable lawsuit before he could have established his claim that the deed was in fact a mortgage. The most that could be said in this connection is that Wilson possibly had a claim to his former homestead as against the grantee in the deed conveying the same away.

The Court of Civil Appeals rather admits the force of the authorities heretofore set out, but undertakes to justify its affirmance of the judgment of the trial court upon the theory that nearly two years prior to the execution of the mortgage on the property in suit Wilson owned another place in Tyler, and that it was still his homestead; in other words, that Wilson still owned other property in Tyler which he once claimed as a homestead, and had not abandoned such claim at the time the property in suit was mortgaged. In support of this theory the Court of Civil Appeals found the following facts, in addition to those already set out herein:

"Wilson married in 1905, and shortly thereafter he and his wife improved and occupied another lot in the city of Tyler as their homestead. They resided upon that lot till about the beginning of 1912, when they rented the premises to another party and moved to Bonham. Some time after its purchase Wilson executed a conveyance of that lot to one Chambers for the purpose of securing a loan. That conveyance was in the form of an unconditional deed, but was intended by Wilson to operate only as a mortgage. He never had repaid that loan, and Chambers had conveyed the property to other parties. Upon the trial Wilson treated that property as having been lost to him. He says he did not know, at the time he made the representations to Guthrie about claiming it as his homestead, that he had lost the property."

Under the facts as found in this connection by the Court of Civil Appeals, we are of the view that—

It would be entirely "unreasonable to credit a man with an intention to claim as his homestead—as against premises owned by him and used as a home—a piece of property whose use as a home had not only been discontinued, but which had been conveyed to another, and by that grantee to a third person, even though the first conveyance was shown to have been a mortgage."

We find it difficult to see how Wilson could have more effectively abandoned his former home than he did. He moved away from it nearly two years before the mortgage in question was executed, and had not returned to it since. Not only did he thus discontinue his use of it as a home, but he conveyed it to another by an instrument which, on its face, was an unconditional deed. It is true he now claims said instrument was only a mortgage. Be that as it may, the actual facts, regardless of any representations he may have made to Guthrie when trying to borrow money, really and conclusively show an abandonment in law of the former property as a homestead.

Our courts have very properly realized that the financial necessities of the occasion frequently cause borrowers, who are also home owners, to make representations to lenders of money, orally and in writing, which are actually in the face of the real, open, visible, and physical facts. The courts have been entirely justified in uniformly holding, as shown by some authorities hereinbefore set out, that representations which are contradicted by the actual visible facts cannot avail to avoid our constitutional provisions protecting homesteads. No matter what Wilson may have said, the actual facts clearly show that he had abandoned his former home long before the mortgage in suit was given; that the latter was executed on property in use at the time as a home; that the same was absolutely void and its foreclosure should not have been decreed.

We think the case at bar is clearly ruled by the principles laid down by our Supreme Court in the case of Loan Co. v. Blalock, supra. We are not unmindful of a very able opinion by Justice Williams, of our Supreme Court, in case of Parrish & Potter v. Hawes, 95 Tex. 185, 66 S. W. 209. In that case Judge Williams reviews the opinion in Loan Co. v. Blalock, and entirely approves the same. It is true that Judge Williams in the case just referred to held that representaions about a homestead might be given effect in certain cases. But, in that case, the facts showed no such exclusive use of either place as to make it clear to outsiders which was the homestead. Both were being occupied. The actual homestead did depend largely, therefore, upon intention and designation of the parties themselves. As showing the views of Judge Williams in this matter, we quote from his opinion as follows:

"The fact of an unequivocal and exclusive use of one place to the exclusion of the other was not present, as in the Blalock Case, to notify the lender that the representations made were false, that they were, in truth, misrepresentations, not only of patent and notorious facts, but of a legal status which the property had acquired. If possession and use in the Blalock Case notified the lender that the property on which they were lending money was certainly and unequivocally the homestead, the possession and use in this case notified the lenders that either place might be the homestead upon the election or intention of the owners, and this was the point upon which the declarations were sought and made. Such declarations were not contrary to, but consistent with, facts which the evidence tended to establish. If, under such facts, the mortgagors could disregard such action and defeat the mortgage upon the plea of homestead, the same defense, under the same facts, would have been open to them had they made such representations concerning the other property and mortgaged it."

Again, in the same opinion, the learned justice significantly says:

"It is perhaps proper that we add that we do not mean to hold that because two places may have been used as the home, one of them may not have been, by the claim and conduct of the owners, so clearly and unequivocally designated as homestead as to make it such in law, and to require all persons dealing with them to take notice of its status. We deal only with the facts certified."

Under the aforesaid rules announced by Judge Williams, we are of the opinion that the facts in the case at bar show such an unequivocal and exclusive use of the property in suit by Wilson as a homestead, to the exclusion of the former home, as to render the place in suit his homestead, not only in fact, but in law as well.

We regret to see lenders of money lose their loans. But, for years and years, they have known of the restrictions of our Constitution and statutes protecting the home from sale under mortgage, except in specified cases. They have also known that the Texas courts have uniformly construed these laws in favor of the homestead exemption. Every possible construction has been in favor of the home as against the mortgage. Our Supreme Court has made a national reputation in establishing our homestead laws. They are the brightest gems, in our judgment, in the jurisprudence of our state. The bars have never been let down. We are in hearty accord with the splendid history of our courts, and would be the last to recommend any change in this wise and well-established policy.

[3] Wilson did not appeal from the judgment against him for the amount due upon the note in suit. That judgment was proper, in any event. But, under the undisputed facts and circumstances in evidence, the mortgage in suit was upon a homestead, in use at the time by the possessors as a home, and therefore absolutely void. For that reason, the only proper judgment, as affects it, would have been one denying Athlena Long a foreclosure thereof.

Therefore we recommend that the judgments of the district court and the Court of Civil Appeals, awarding Athlena Long a judgment against Wilson for the amount due upon the note in suit, be affirmed; that the judgments of both of said courts awarding a foreclosure of the mortgage lien in suit be reversed, and judgment rendered, denying to Athlena Long, as sole surviving heir of M. E. Guthrie, a foreclosure of said lien. We recommend, also, that the plaintiff in error recover of Athlena Long all costs incurred in all the courts.

CURETON, C. J. On consideration of the opinion of the Commission of Appeals, it is ordered by the Supreme Court that the judgments of the district court and of the Court of Civil Appeals be reformed so as to award to Athlena Long a judgment against Wilson for the amount of the note sued on, and so as to deny a foreclosure of mortgage lien. It is further ordered that the plaintiff in error recover of Athlena Long all costs incurred by him in the district court, Court of Civil Appeals, and in the Supreme Court.