**TELLER et al. v. FITCH et al. (No. 7508.)**

(Court of Civil Appeals of Texas. San Antonio. March 3, 1926.)

**1. Homestead ⬅️33.**

Home need not actually be built or improvements actually made on premises selected as homestead to secure exemption.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Homestead.]

**2. Homestead ⬅️31.**

Homestead exemption will be extended to premises, if owner intends in good faith to dedicate and improve premises as homestead, and preparations therefor are such as to manifest intention to do so.

**3. Homestead ⬅️57(3)—Finding of abandonment of former homestead, with bona fide intention to use and occupy another tract as homestead, held sustained under evidence.**

Evidence that, pursuant to oral promise when accepting gift of land, defendants left former home and rented place near land, obtaining firewood therefrom and clearing one-acre tract for house, lot, and garden, held to sustain finding of abandonment of former homestead, with bona fide intention to use other tract therefor.

**4. Homestead ⬅️154.**

Where homestead character attaches to premises, it continues until abandonment.

Appeal from District Court, Willacy County; A. M. Kent, Judge.

Action by R. H. Teller and others against A. G. Fitch and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Durell Miller, of Yoakum, and R. F. Robinson and Davis E. Decker, both of Raymondville, for appellants.

J. P. Cogdell, of Raymondville, and H. G. Hart, of Harlingen, for appellees.

SMITH, J. Prior to October, 1923, A. G. Fitch and wife resided on a 430-acre farm in Lavaca county. The farm was owned by them, subject to the vendor's lien for a substantial part of the purchase price, and constituted their homestead. About the time mentioned, Fitch's father gave him 100 acres of land in Willacy county, upon the parol condition that Fitch would make his home thereon, to which the latter and his wife assented. In pursuance of this understanding Fitch and his family set about making arrangements to move to Willacy county. They packed their household effects, and shipped them by freight, and on October 29, Mrs. Fitch and the children proceeded overland to Raymondville, Willacy county, arriving there on the same day. Fitch remained in Lavaca county, shaping up his live stock, adjusting and winding up his affairs, and negotiating for the sale of the old place. He sold the latter, executing and acknowledging a deed thereto on November 10, on which date he started overland with his live stock, which he drove through the country to Willacy county. In the mean time, on November 3, however, the Union Trading Company, the holder of a judgment theretofore rendered against Fitch in Lavaca county, filed an abstract of said judgment in the office of the county clerk of Willacy county, in which the abstract was duly recorded the day it was filed. Mrs. Fitch did not execute or acknowledge the conveyance of the former homestead until September, 1924.

When they moved to Willacy county the Fitches rented a place, on which they have resided ever since. The 100-acre tract was "brush" land, wholly unimproved. The family, residing near, got their fuel wood from this tract, as well as several hundred fence posts. They cleared and grubbed about an acre, "a place for a house, lot, and garden"; but they have done nothing else towards making their home thereon, because of lack of means with which to improve the premises.

Out of these facts arises the controlling question in this case, to wit: Were the intention and conduct of Fitch and his family such as to impress the 100-acre tract in Willacy county with the character of a homestead, and thus secure its exemption from the lien evidenced by the abstract of judgment filed and recorded in that county on November 3?

The jury found, in response to special issues submitted to them, that prior to November 3, 1923, Fitch and his wife abandoned their former homestead in Lavaca county; that prior to that date they "had a bona fide intention to use and occupy the Willacy county tract as a homestead"; and that they did, "in connection with their intention to use and occupy as their home the Willacy county land, do and perform such acts preparatory to carrying such intention into effect as were reasonably consistent with such intention, in view of all the conditions and circumstances surrounding them and the premises in question."

[1, 2] If true, the facts found by the jury are such as to entitle Fitch to the exemption claimed by him in behalf of the Willacy county land—were such as to show abandonment of the old, and the acquisition of the new home, prior to the filing of the abstract of judgment on November 3. It was not essential, to secure the exemption, that a home be actually built or improvements actually

made upon the premises selected as a homestead. If there is present an intention, in good faith, to dedicate and improve the premises as a homestead, and the preparations therefor are of such character and extent as to manifest the intention to complete the improvements and reside upon the premises as a home, then the spirit of the beneficent provision for exemption has been met, and its protection will be extended over the premises.

Here the family acquired the land in controversy with an intention, coincident with an obligation, to make their home thereon. They owned a home previously acquired, but it was heavily incumbered, constituting a burden beyond their means to carry. In acquiring the new homestead, they decided to give up—abandon—the old, and they set about to put the decision into effect. They packed and shipped all their wordly goods, burned the bridges behind them, and journeyed to the new land, with no thought or intention of ever returning to the old. They arrived in the vicinity of the proposed new homestead, which had no improvements of any character thereon, and rented a place near by. At this juncture, the abstract of judgment was lodged with the county clerk and recorded, whereby the status of the parties was then and there fixed. The interval between the abandonment of the old home and the intervention of the potential judgment lien, a period of about four days, was too short to permit of any actual improvement of the new home, or any definite preparations to that end. But in due course, and in prosecution of the clear purpose and intention theretofore formed and consistently thereafter pursued, the family obtained a supply of fence posts from the land, used and still use the premises for procuring fuel for domestic use, and cleared space "for a house, lot, and garden."

Crop failures for the time being have halted the family's plans for further improvements, but the intention and determination to make the home on the premises still remain, to be prosecuted and completed as soon as the family can earn the necessary means to enable them to carry out their purpose. We think that, under the facts stated, the family will be protected, while economically living on rented premises, until enough is saved to erect a house and other essential improvements upon their own land. If not, then the constitutional guaranty is a mockery, and does not help the poor man, for whose benefit and protection the exemption was frankly created. We think any other construction would be inconsistent with the spirit of the exemption, and would tend to thwart, rather than promote and secure, the purpose for which that exemption was designed.

[3] We have concluded that the evidence supports the findings of the jury, and accordingly overrule appellant's second and sixth propositions of law. We also overrule appellant's first proposition, attacking the sufficiency of appellees' "first supplemental petition and replication" filed in the court below. That pleading was not subject to the objections made; but, even if it had been, its presence in the record could not have injured appellant.

[4] Execution was issued under the abstracted judgment, and the land in controversy was levied upon thereunder, on October 14, 1924. Appellant insists that the jury should have been required to find upon the specific issue of whether or not the land was the homestead of appellees at all times between November 3, 1923, the date of the filing and recordation of the abstract of judgment, and October 14, 1924, the date of the issuance of execution under said judgment, as well as at the date of the trial of this cause. It is contended by appellant that findings under these issues might have established that after the filing of the abstract of judgment the premises ceased to be appellees' homestead, in which contingency the judgment lien would have instantly and irrevocably attached to the premises. This question is raised in appellant's third, fourth, and fifth propositions, which must be overruled. The jury found that the character of a homestead had attached to the premises prior to November 3, 1923, when the abstract of judgment was filed and recorded, thus establishing the existence of the homestead. Having become such, that character attached to the premises until an abandonment thereof occurred. There was no evidence upon which the jury could have based a finding of such abandonment, and the court did not err in refusing to submit the rejected issues.

We conclude the judgment should be affirmed; and it is so ordered.