## GRIMES v. CLINE. (No. 3442.)*

Court of Civil Appeals of Texas. Texarkana. Nov. 11, 1927.

Rehearing Denied and Dissenting Opinion, Dec. 1, 1927.

1. Homestead ⬚81—Premises occupied by family may be exempt as homestead whether occupancy is by owners of fee or less estate.

Premises occupied by family may be exempt to them as a homestead whether such occupancy be by family as owners of fee or a less estate or as lessees or renters for a, fixed term or at will of owner.

2. Homestead ⬚154—Homestead premises continue as such so long as occupying family owns them or has right to occupancy or until abandonment.

Premises which have become a homestead continue as such so long as family occupying them owns same, or, if they are not owners thereof, so long as they have a right to occupancy, or until they have moved from and abandoned premises.

3. Homestead ⬚154—Homestead can be abandoned only by moving from premises with intent to abandon same.

Homestead, once acquired, can be abandoned in no other way than by moving from premises with intent to abandon same as a home.

4. Homestead ⬚13—Family can have only one residence homestead at the same time.

Family cannot have more than one residence homestead at one and the same time.

5. Homestead ⬚31—Leased premises did not become occupant's homestead without intention.

Leased premises did not become homestead of occupant, owning other property, unless occupant intended that it should constitute his homestead.

6. Homestead ⬚31—Occupancy and use of leased premises by owner of other property did not have effect of making leased premises homestead.

Occupancy and use of leased premises by person owning other land which he intended to make his homestead did not have effect of making such leased premises his homestead.

Hodges, J., dissenting.

Appeal from District Court, Walker County; Carl T. Harper, Judge.

Suit by W. A. Grimes against A. L. Cline. Judgment for plaintiff, but denying a lien under a writ of attachment as to a portion of land on which levy was made, and plaintiff appeals. Affirmed.

The suit was by appellant, Grimes, to recover of appellee, Cline, the amount of promissory notes made by the latter for sums aggregating more than $3,000, and to foreclose the lien of a deed of trust on a sawmill plant conveyed by appellee to a trustee to secure payment of the notes. At the time he commenced the suit appellant caused a writ of attachment to be issued and levied upon 253.4 acres of land in Walker county; the levy being made subject to a lien securing a loan of about $2,400 made to appellee by the Federal Land Bank of Houston. Appellee did not contest the right claimed by appellant to a judgment for the amount sued for and foreclosing the lien of the trust deed on the sawmill plant and the lien of the attachment on 53.4 acres of the 253.4 acres levied upon by virtue of the writ, but did contest the right claimed by appellant to a foreclosure of the lien of the attachment on the remaining 200 of the 253.4 acres. With reference to this he alleged that, at the time of the levy of the writ, he had a wife and four children, and, as the head of a family, was entitled to claim the 200 acres as his and their homestead. In a supplemental petition appellant alleged that, at the time the writ was levied on the 253.4 acres, appellee, with his family, was residing upon premises in the city of Huntsville (known as the Simms Whitley place), which he (appellee) had leased from its owners, and that that place, and not the 253.4 acres, or any part of same, was then appellee's homestead.

The trial was to the court without a jury,

and he found as facts that the 253.4 acres was conveyed to appellee by a deed dated October 24, 1922; that the writ of attachment was levied on same December 19, 1925; that at the time the land was conveyed to appellee, and "at all times thereafter, the defendant (appellee) intended to establish his homestead residence thereon, and to consecrate 200 acres thereof for use as a homestead for himself and family; and some time prior to the filing of this suit, that is to say, in August or September, 1925, the defendant planted a garden on said tract of land, and began to make other preparations to move thereon, and, in November, 1925, the defendant employed carpenters and caused a house that was located on said tract of land to be repaired and put in suitable condition for occupancy for a home for himself and family, and in the latter part of November, or in the very early part of December, 1925, the defendant caused a brick chimney to be built on said house, and in November, 1925, began to move his household goods into said house with the avowed intention, and with the real intention, of making same his home, and would have completed his removal into said house in the month of November, 1925, except for the illness of his wife"; that, at the time appellee began to so prepare to make said tract of land his homestead in fact, he owned no other home, and "was (quoting) only the tenant from month to month of a house in the town of Huntsville, where he and his family had lived for a year or longer as such tenants"; and that, at the time the suit was commenced, appellee had no other homestead than that he claimed on the land levied upon as stated by virtue of the writ of attachment. The court concluded as matter of law that, while appellant was entitled to recover $3,766.26 of appellee, and to a foreclosure of the lien asserted on the sawmill plant, and on 53.4 acres of the 253.4 acres, appellee was entitled to the 200 acres remaining as his homestead. From a judgment rendered by the court in accordance with such conclusion appellant prosecuted this appeal.

Henson & Thomason, of Huntsville, for appellant.

Dean & Humphrey, of Huntsville, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] It is settled law in this state:

(1) That premises occupied by a family may be exempt to them as a homestead, whether such occupancy be by the family as owners of the fee or a less estate, or as lessees or renters for a fixed term or at the will of the owner. Wheatley v. Griffin, 60 Tex. 209; Williams v. Withered, 37 Tex. 130; Cullers v. James, 66 Tex. 494, 1 S. W. 314; Phillips v. Warner (Tex. App.) 16 S. W. 423; Anheuser-Busch Brewing Ass'n v. Smith (Tex. Civ. App.) 26 S. W. 94; Bank v. Cruger, 31

Tex. Civ. App. 17, 71 S. W. 784; Birdwell v. Burleson, 31 Tex. Civ. App. 31, 72 S. W. 446; Ellis v. Bingham (Tex. Civ. App.) 150 S. W. 602; First Nat. Bank v. Dismukes (Tex. Civ. App.) 241 S. W. 199; Cry v. I. W. Bass Hardware Co. (Tex. Civ. App.) 273 S. W. 347; Collett v. Brokaw (Tex. Civ. App.) 296 S. W. 333.

[2] (2) That premises which have become homestead continue such as long as the family occupying them own same; or, if they are not the owners thereof, so long as they have a right to occupy same; or until they have moved from and abandoned the premises as a home. Archibald v. Jacobs, 69 Tex. 248, 6 S. W. 177; Johnston v. Martin, 81 Tex. 18, 16 S. W. 550; O'Brien v. Woeltz, 94 Tex. 148, 58 S. W. 943, 59 S. W. 535, 86 Am. St. Rep. 829; Clem Lumber Co. v. Elliott Lumber Co. (Tex. Com. App.) 254 S. W. 935; Teller v. Fitch (Tex. Civ. App.) 281 S. W. 893.

[3] (3) That, once acquired, a homestead can be abandoned in no other way than by moving from the premises with the intent to abandon same as a home. Powers v. Palmer, 36 Tex. Civ. App. 212, 81 S. W. 817; Pierce v. Langston (Tex. Civ. App.) 193 S. W. 745; Sharp v. Johnston (Tex. Sup.) 19 S. W. 259; Bayless v. Guthrie (Tex. Com. App.) 235 S. W. 843; Staten v. Harris (Tex. Civ. App.) 239 S. W. 334; Clem Lumber Co. v. Elliott Lumber Co. (Tex. Com. App.) 254 S. W. 935.

[4] (4) That a family cannot have more than one residence homestead at one and the same time. Johnston v. Martin, 81 Tex. 18, 16 S. W. 550; Pierce v. Langston (Tex. Civ. App.) 193 S. W. 745.

Such being the law, we think the judgment was wrong, so far as it denied appellant a foreclosure of the attachment lien on 200 of the 253.4 acres levied upon, if the premises in Huntsville, known as the Simms Whitley place, became appellee's homestead, for the evidence was undisputed that appellee and his family, as tenants from month to month, had occupied the Whitley place for more than a year before, and were so occupying same at the time; the writ of attachment was levied on the 253.4-acre tract.

As we view the record, the judgment is sustainable, if at all, only on the theory that the trial court had a right to say that the Whitley place did not become appellee's homestead, unless he intended it should, and that it appeared from the evidence he did not so intend.

[5, 6] That the trial court had a right to say the Whitley place did not become homestead, unless appellee intended it should, we think is clear. Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832. In the case cited Judge Brown said:

"Intention alone cannot give a homestead right; but it is at the same time equally true that all other things combined cannot give it without the intention to dedicate it to the uses of a home."

That the evidence warranted the finding that appellee never intended the Whitley place to be his homestead we think is also clear, unless the occupancy and use thereof by him and his family should be held to have conclusively established his intent to be to the contrary. Did such occupancy and use have that effect? We think not. We know of no law declaring occupancy and use of premises as a home by a family to be conclusive evidence of an intent on the part of the head of the family to make such premises his homestead. No reason occurs to us why one who has purchased land, intending it to be his homestead, should be denied a right to claim it as such merely because he and his family occupied and used rented premises as a home until they could improve and move to the purchased land. To so hold, it seems to us, would often operate to defeat the purpose of the constitutional exemption, for a family living on rented premises could never purchase and improve land and hold it as their homestead against the claims of creditors.

The judgment is affirmed.

HODGES, J. (dissenting). In his opinion the CHIEF JUSTICE has stated most of the material facts necessary to be considered in disposing of the principal questions presented in this appeal. He has also concisely stated four appropriate propositions of law, which are amply supported by the cases referred to. If those legal propositions are applied in this case, it would logically follow, I think, that the judgment of the trial court should be reversed. Its affirmance is based upon the conclusion that "the court had a right to conclude that the Whitley place did not become appellee's homestead unless he intended it to, and it appeared from the evidence that he did not so intend." The Whitley place was the leased residence and lot situated in the town of Huntsville occupied by the appellee and his family at the time the writ of attachment was levied on the land. It had been so occupied for more than a year before he moved and established his residence upon that land. The evidence shows that, at the time he leased, and began to occupy, the Whitley place, he owned no other homestead. The land in controversy had not then been in any manner dedicated as a homestead. The proof shows that it was rented to other parties until a few days before it was occupied by the appellee and his family as their home.

The controlling question in this case is, Was the Whitley place in law and in fact appellee's homestead at the time the writ was levied on his land in the country? Unquestionably it would have been so considered if at that time he had been the owner of the Whitley place, and not a mere tenant. Being an owner and in actual occupancy, his intention to make those premises his homestead would have been conclusively presumed.

Having done all that was required to do in establishing a home, he would not be heard to say, under those circumstances, that he did not intend to do that which he had deliberately done. His declarations to the contrary would be inadmissible to show the absence of such an intent. Jacobs, Bernheim & Co. v. Hawkins et al., 63 Tex. 1; Medlenka v. Downing, 59 Tex. 40; Radford v. Lyon, 65 Tex. 471; Hines v. Nelson (Tex. Civ. App.) 24 S. W. 541; Giersa v. Gray (Tex. Civ. App.) 31 S. W. 231. In the first case cited the court said:

"The declaration of Hawkins [the homestead claimant] as to the character of the property secured by the mortgage was properly excluded; for if, in fact, the property was homestead, the mere declaration of the husband to the contrary could not make it that which it was not in fact.

"In cases in which property has not been used as homestead, or is not so used, the declarations of a husband would seem to be admissible for the purpose of showing that there was no intention so to use it as to make it the homestead.

"And this would seem to be true, where a place formerly used as homestead is not longer occupied; and so, for the purpose of indicating an intention never again to use it, which, coupled with the act of removal, would amount to an abandonment.

"But where in fact the property is actually in use for homestead purposes, neither the declaration of the husband or wife, or both, can change its character."

In Medlenka v. Downing the question was whether a lot which had formed a part of an urban homestead, and which had been mortgaged, was thereby severed from the homestead by the declaration of the mortgagor at the time the mortgage was executed. The court held that, regardless of what the intentions with reference to a homestead claim of the mortgagors might have been, if the premises were in actual use for homestead purposes, those declarations were not admissible. It was said:

"A lien, however, given upon property which in fact is homestead at the time the lien is given, is invalid, although there may be an intention, even evidenced by a designation in writing, of less than is actually used at the time as the home, to make the homestead not embrace the property upon which the lien is given, as in this case.

"At the time the deed of trust through which the defendants in error claim was executed, the land between what is designated in the plat of the block, made a part of the statement of facts in this case, as 'second fence,' and the fence between that and the houses, which on the plat is designated 'first fence,' which land on the plat is marked 'garden,' was used as a garden.

"This was such use as fixed upon that property the homestead character at the time the deed of trust was given, and the mere designation of something less as the homestead cannot withdraw from it that character, any more than a mere intention to abandon a homestead, un-

accompanied with removal therefrom, can operate as an abandonment."

It has been repeatedly held that, where the premises are actually occupied by the family, as the Whitley place was in this instance, at the time the mortgage thereon is executed, the declarations of the husband and wife, made at the time they gave the incumbrance, that the land was not their homestead, but that they claimed other property, will not be considered as a defense in establishing the validity of the mortgage. In Hines v. Nelson, supra, it is said:

"Where the head of a family has no homestead, and shows by declaration, ownership, and preparation, or other circumstances, that he intends to dedicate a certain property to homestead purposes, it must be given effect; but when a homestead has been actually dedicated, and is actually occupied as a home, the improvement of another place, accompanied with the declaration of intention to make the latter place the homestead, cannot divest the actual home of its homestead character, in the face of the fact of occupancy and all other accompanying circumstances that go to make a homestead."

In the present case the proposition on which the judgment is affirmed may be stated in this form: Although the appellee had an interest in the Whitley place sufficient to constitute the basis of a homestead claim, and even though he actually occupied that place as the family residence for more than a year, yet, if he did not intend to consider it his homestead, it was not in fact such. The absence of an intention to so regard the place as a home it is claimed deprived it of its homestead character, notwithstanding all of the other essential elements existed. That proposition is, I think, at variance with the decisions above referred to. Let us suppose that, while owning and occupying the Whitley place, the appellee had mortgaged it to secure a debt, for which the homestead could not be incumbered, declaring at the time that he did not intend to claim that place as his homestead, and designated as his home the land situated in the country and on which he had never resided. Would such declaration and designation be accepted as evidence that the Whitley place was not the homestead when mortgaged? Clearly not, under the rule announced in the cases cited above, and many others to the same effect. The only difference between this case and that used in the illustration is the fact that in this the claimant of the homestead did not own the fee to the occupied premises. Whether or not that difference is of importance will be discussed later.

The case of Cameron v. Gebhard, which is cited as supporting the conclusions of the majority, involved a state of facts so different from those here under consideration that the language quoted is misleading when applied to this case. There the question was whether premises which had never been occupied become a homestead. Some preparations had been made tending to show a dedication for homestead purposes. The former home had been sold, and there was no evidence that the claimant at the time occupied any other premises as a home. The preparations that had been made upon the lot involved might or might not indicate an intention to use it in the future as a home. It was under those circumstances that the intention was looked to for the purpose of determining whether there had been a dedication sufficient in law to establish a homestead claim. When that case and others of similar import are examined, it will be found that intention is given a controlling effect when the physical conditions and surrounding circumstances are uncertain and ambiguous, when not inconsistent with a use other than as a homestead. It is then that the declarations of intention made by the claimant become material to be considered in determining what would otherwise be uncertain. But, so far as I have found, there is no case in this state which holds that a declaration of intention is admissible to prove that premises actually occupied by the head of the family were not in fact the homestead, when there is no other property to which the homestead claim may attach.

The declarations of a husband and wife disclaiming a homestead interest in occupied premises, and designating as their home other land not so occupied, are certainly some evidence that they did not at the time have an intention to claim and consider the occupied premises as their homestead. Since we cannot probe the mind of another, it often happens that what another solemnly declares at a decisive moment is the best and only evidence of what his intentions are at that time. If his intentions at such a time are to be given controlling effect, why reject such cogent evidence of what those intentions were? It would seem absurd to attach great legal importance to the intentions of a mere state of mind, and none whatever to the best available evidence of what that state of mind is at the time it is an important subject of inquiry.

If such declarations of the husband and wife are rejected, because unimportant when offered to defeat a subsequent homestead claim to occupied premises, when the occupant owns the fee, upon what ground can they be considered when inquiring into their intentions when occupying premises leased as a family residence? Unless in applying the rule a distinction is to be made between premises which are owned by the occupant and those which are leased, there is no escape from the conclusion that the Whitley place was the homestead of the appellee during its occupancy, and that it remained such till actually abandoned. The evidence shows that the writ was levied on the land some time be-

fore the appellee moved his family from that place.

In the opinion concurred in by my associates it is held that a leasehold interest in property is sufficient to constitute the basis of a homestead right which is protected by the Constitution. The cases referred to place that proposition beyond controversy in this state. In the case of Cullers v. James, 66 Tex. 494, 1 S. W. 315, the facts show that James had leased a small tract of land for the operation of a gin and grist mill. The land was owned by Walker, but the residence and building in which the machinery was located, and the machinery itself, were owned by James. The question arose as to whether the buildings situated upon that property were subject to seizure for the debts of James, or were exempt as a business homestead. The court held that the property was exempt. In Johnston v. Martin, 81 Tex. 18, 16 S. W. 550, Johnston owned a tract of land situated in the country which he had mortgaged to secure a promissory note. At the time the mortgage was executed he and his family resided in the town of Brownwood, and occupied a house owned by Johnson, which was situated upon leased premises. The lease was for a term of five years, and about half of the time had expired at the time the mortgage was given. The building was used as a residence and a place in which Johnson conducted his business. The facts also show that Johnson had previously made some preparations to use the mortgaged land as a home for his family, and intended to occupy it at some time in the future. On the trial he offered to testify that at the date of the execution of the deed of trust he owned no homestead, except the land which had been seized. The evidence was objected to and excluded. He also offered to testify that the land which had been seized was purchased by him for a homestead, and that, prior to the execution of the deed of trust, he and his wife went upon the land, designated and set apart that tract as their homestead, and that it was their intention at the time of the execution and delivery of the deed of trust to make it a homestead. That testimony was excluded, and the ruling was approved by the Supreme Court. In disposing of the case it was said:

"The facts found by the court that the defendant owned a house situated in a town and upon land which he held a lease for, in which he resided and conducted his business, precluded his acquisition of a homestead in the country by the performance of the acts and with the intention claimed by him to have existed. We think that if all of the acts with regard to the land in controversy, as well as the purpose of intention of the defendant with regard to making it his future place of residence, be admitted, it still must be held that the house that he

was occupying in town was beyond controversy exempt as a homestead. He could not have two exemptions at the same time."

The only legal difference between the facts of that case and those involved in this is that there the tenant owned the house, whereas in the present case he did not. But that fact is, I think, of no legal importance in considering the question before us, since it is not essential that the tenant should own the house occupied in order to acquire a homestead interest in leased premises. The Constitution exempts, not the house, but the lot; and the house is exempted only because it is a part of the realty to which it is attached. Cullers v. James, supra.

In this appeal counsel for appellee defends the judgment of the trial court upon the ground that the lessee of real property has no estate which the constitutional exemption can protect. The argument is that the constitutional provision relied on is designed to protect property which would otherwise be subject to seizure for debt; that, where there is no estate to be protected from such seizure, there is no ground for the application of an exemption law. It is claimed that the case of Johnson v. Martin is distinguishable from this because in that case the lessee owned the house, while in this he owned neither the house nor any interest in the land. The argument is directly opposed to the holdings of the courts in this state. The lessee of real property does acquire an estate, which, if not protected by some legal exemption, may be seized for debt by creditors. Tiedman on Real Property (3d Ed.) § 140; Williams on Real Property, 404. The fact that we have a statute which prohibits the assignment or subletting of leased premises without the consent of the lessor is of no importance in determining that question. That statute does not change the common-law quality of the estate conveyed by a lease.

I concede that, in determining whether or not premises occupied are the homestead of the family, intention is an important element to be considered. But, when the head of the family has made a home upon premises where he had the right to make it, the intention is conclusively presumed to be in harmony with what he has deliberately done. He then has in fact a home, not merely a place which he may or may not claim as a home. Bayless v. Guthrie (Tex. Com. App.) 235 S. W. 843. Certainly in this case the appellee had an interest in the Whitley place which could not have been invaded or disturbed by the claims of his creditors. If that be true, then he could not claim the same immunity for premises which had never been occupied as a home. He cannot claim two homesteads.