**CLEM LUMBER CO. v. ELLIOTT LUMBER CO. et al. (No. 452—3839.) \***

(Commission of Appeals of Texas, Section A. Oct. 10, 1923.)

1. Pleading &#9758;34(3), 216(2)—Every intendment indulged in support of sufficiency of pleading when challenged by demurrer; pleading attacked by demurrer considered with pleadings of opposite party.

When a pleading is challenged by general demurrer, every reasonable intendment from the allegations contained therein will be indulged in support of its sufficiency, and in reviewing the trial court's ruling thereon the pleading attacked must be considered with the pleadings of the opposite party.

2. Contracts &#9758;54(1)—Intervener can hold lien claimant on promise of buyer to pay him for materials furnished by intervener.

Where plaintiff lumber company agreed to furnish materials for defendant's apartment house and intervener lumber company furnished materials to defendant with plaintiff's authority, the intervener can hold plaintiff on the promise of the owner of the building to pay plaintiff for materials thus furnished.

3. Homestead &#9758;95—Homestead character must exist at time contract is made to be free from materialmen's liens.

Where material is furnished for the construction of a building by contract, the laws of the state give a lien unless the property was a homestead at the time of making the contract.

4. Homestead &#9758;154—Occupied homestead cannot be abandoned by mere intention.

Where an owner continued to occupy his home, though he intended to abandon it on completing another building, such home until actually abandoned remained his homestead.

5. Homestead &#9758;95—Lien attached where material was furnished before property acquired homestead character.

Where the material for a building was furnished under a contract before the property acquired a homestead character and before the owner abandoned his former homestead, a lien attached which was superior to any right of exemption subsequently acquired.

6. Homestead &#9758;38—Steps necessary to constitute a business homestead.

An owner cannot maintain exemption of his property on the grounds that it is his business homestead, unless it appears that he intended to dedicate it for such calling, and actually occupied it for that purpose or took steps necessary to give notice of his intention to occupy such property.

7. Homestead &#9758;213—Allegations insufficient to allege "business homestead" under statute.

Failure of owner to allege his calling, and that the building under construction was suitable for such calling, is insufficient to constitute the place his business homestead; under the Constitution defining it as a place to exercise the calling of the head of the family.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Business Homestead.]

8. Appeal and error &#9758;1175(7)—Appellate court may render judgment where trial court should have instructed a verdict.

Where the owner of land set up a claim of homestead as defense to a suit to foreclose a materialman's lien, but failed to establish the building as his homestead, the court on appeal could, under Rev. St. art. 1626, render judgment where, on the evidence the trial court should have instructed a verdict against him.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by the Elliott Lumber Company against G. B. Mitchell, in which the Clem Lumber Company intervened and Mrs. L. E. Mitchell joined in the defense. From a money judgment for plaintiff, but denying foreclosure of its materialmen's lien, and against plaintiff in favor of intervener, plaintiff appealed to the Civil Court of Appeals which reversed in part (241 S. W. 221), and defendant and intervener bring error. Affirmed in part and reversed in part.

Sayles & Sayles, of Abilene, and J. R. Stubblefield and Chas. C. Robey, both of Eastland, for plaintiffs in error.

Scott, Brelsford, Funderburk & Ferrell, of Eastland, for defendant in error.

─────────────

&#9758;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
\*Rehearing denied November 28, 1923.

GALLAGHER, P. J. This suit was instituted in the district court of Eastland county, and the parties will be designated as in that court. Plaintiff Elliott Lumber Company sued defendant G. B. Mitchell on verified account for $8,060.25, and for foreclosure of materialmen's lien on the tract of land 75 feet wide and 100 feet long in the city of Eastland in the said county, together with the unfinished improvements thereon. The Clem Lumber Company intervened, and sought recovery against defendant and plaintiff for the sum of $1,780.15, and the foreclosure of materialmen's lien on the same property. Mitchell, among other defenses, pleaded that said property was homestead at the time plaintiff and intervener attempted to fix their respective liens and that no lien attached thereto, because the contracts for the purchase of the material and supplies sued for by them were verbal. Mrs. L. E. Mitchell, wife of defendant, made herself a party to the suit and joined in defending against foreclosure of said liens. There was a trial by jury on special issues. Upon the finding of the jury, the court rendered judgment in favor of plaintiff against defendant for the sum sued for, and in favor of intervener against defendant and plaintiff for the sum of $1,730.10, and against defendant alone for the sum of $50.15, and in favor of defendant, declaring the said property was homestead and refusing to establish or foreclose the liens thereon asserted by plaintiff and intervener. Plaintiff appealed. The Court of Civil Appeals reversed the judgment of the trial court so far as it denied a foreclosure of the liens asserted by plaintiff and intervener, and rendered judgment foreclosing the same. It reversed the judgment in favor of intervener against plaintiff, and remanded the cause as to them to the district court for another trial, and in all other respects affirmed the judgment. 241 S. W. 224. Both intervener and defendant applied for a writ of error, and both applications were granted.

Plaintiff and intervener were both dealers in building material in Eastland, Tex. The account sued on by plaintiff was for such material furnished defendant to be used in the erection of an apartment house on the lot described in its petition. Intervener alleged that it sold and delivered to the defendant for such purpose certain building material, as shown by its itemized account sued on, and further alleged that plaintiff had agreed to pay for the same, and that certain items constituting the major portion of its account were embraced in the account sued on by plaintiff. To this pleading plaintiff interposed a general demurrer which was overruled.

Plaintiff, on appeal, assigned as error the action of the court in overruling its general demurrer and submitted under such assignment the following proposition:

"The amended petition and plea in intervention of Clem Lumber Company was subject to general demurrer in that there was no allegation that the alleged agreement of plaintiff, Elliott Lumber Company, to pay the account of said Clem Lumber Company against defendant G. B. Mitchell was supported by any consideration; the alleged agreement not being such as under the law imports consideration."

The Court of Civil Appeals sustained said assignment and its action in reversing and remanding the cause on the issues between plaintiff and intervener was based thereon.

The defendant alleged that the plaintiff agreed to furnish to him all the material and supplies necessary to construct said apartment house, and that he agreed to pay plaintiff therefor in monthly installments. Plaintiff alleged that the material and supplies sued for by it were furnished to the defendant in pursuance of a contract made with him before any of said supplies were furnished, and that by the terms of such contract defendant bought the same from it, and it sold and delivered the same to defendant. These pleadings were on file and before the court at the time the demurrer was acted on.

On the trial of the case the manager of plaintiff testified that he did agree with defendant to furnish all the material for said apartment house and that the agreement was verbal. He further testified that he did not have the necessary tile and brick in stock and that he authorized the defendant to procure the same from some other dealer and promised to pay therefor. The account sued on by intervener to the amount of $1,730.10 is for such tile and brick. The principal items in the account sued on by intervener are embraced in the account sued on by plaintiff.

[1, 2] The rule is well established that, when a pleading is challenged by general demurrer only, every reasonable intendment from the allegations contained therein, taken as a whole, will be indulged in support of its sufficiency. It is also well established that in determining whether the action of the court on such demurrer in any particular case constitutes reversible error the pleading attacked thereby must be considered in connection with the pleadings of opposite parties.

When intervener's petition is considered in connection with the pleadings of plaintiff and defendant, we think it sufficiently appears as against a general demurrer that plaintiff had agreed to furnish to defendant the very material which was furnished to him by intervener and that defendant had promised to pay plaintiff therefor, and that plaintiff authorized the defendant to procure such material from some other dealer and promised to pay such dealer therefor. Such construction is in harmony with the facts as testified to by plaintiff's manager on the trial of

the case. The promise of defendant to repay plaintiff for such material was ample consideration for plaintiff's promise to pay for the same when furnished by some other dealer in pursuance of its own suggestion and agreement. The pleadings as a whole sufficiently allege the consideration for the promise of plaintiff to pay for the material furnished by intervener, and the Court of Civil Appeals erred in holding plaintiff's general demurrer well taken and in reversing the judgment against plaintiff in favor of intervener on that ground. Day Co. v. State, 68 Tex. 526, 538, 4 S. W. 865; Lyon v. Logan, 68 Tex. 521, 525, 5 S. W. 72, 2 Am. St. Rep. 511; Peoples v. Brockman (Tex. Civ. App.) 153 S. W. 907, 910 (writ refused), and other authorities therein cited; Wright v. McCampbell, 75 Tex. 644, 647, 648, 13 S. W. 293; Childress v. Robinson (Tex. Civ. App.) 161 S. W. 78, 81; Hand v. Sovereign Camp Woodmen of the World (Tex. Civ. App.) 214 S. W. 718, 720; Vrablec v. Kocurek (Tex. Civ. App.) 199 S. W. 876, 877; Hotel Dieu v. Armandariz (Tex. Civ. App.) 167 S. W. 181.

The defendant, Mitchell, is joined in his application for writ of error by his wife. They state in express terms that their complaint is predicated upon the issue of homestead alone. Mrs. Mitchell owned a house and lot in San Antonio which she, with her husband and children, occupied as a home. On or about January 1, 1920, while so occupying the same, she and her husband agreed together that they would procure a suitable lot in Eastland, erect an apartment house thereon, and move into and occupy the same as a home when completed. In pursuance of such agreement, and with such intent and purpose, defendant procured the lot involved in this suit and had plans for such house prepared, and on or about January 28, 1920, entered into a verbal agreement with plaintiff, by the terms of which plaintiff was to furnish to him all the material necessary to complete said house and he was to furnish the labor to erect the same and to pay plaintiff for such material. The first bill for material delivered on said job was dated January 31, 1920. Deliveries continued from time to time until the 28th of May following, when plaintiff declined to furnish any further material. The issue of breach of contract on the part of plaintiff was submitted to the jury and determined in plaintiff's favor. Plaintiff and intervener proceeded to fix a materialman's lien for the material furnished by each respectively, the regularity of which proceedings is in no way questioned. At the time plaintiff declined to furnish further material the apartment house was only partially completed. A two-story garage erected on said lot in the latter part of February or early part of March was immediately occupied by defendant and his four sons, all of whom were carpenters and working on said improvements at the time. From the time said lot was procured and the erection of said apartment house agreed upon, defendant and his said wife intended to abandon their home in San Antonio, move to Eastland, and occupy said apartment house as a home as soon as completed. With this purpose in view, as soon as said lot in Eastland was procured, they began to negotiate for the sale of the San Antonio property and early in January agreed upon terms for sale or exchange of the same. No written contract of sale was made, and no conveyance of the property executed or delivered, until March 16, 1920. The use of said property as a home continued until its sale, and by a special arrangement after such sale, until about the first of July 1920, when Mrs. Mitchell and her children moved to Eastland and joined her husband in the occupancy of the second story of said garage as a home. This intent and purpose was corroborated by declarations of both husband and wife made to several persons in connection with the purchase of said lot and the preparations of the plans for said apartment house. There is no contention that said lot at the time of this contract between defendant and plaintiff was fenced or otherwise improved.

The court submitted to the jury whether the property involved herein was homestead at the time the contract with plaintiff was made. In connection with such issue the court instructed the jury that they might, in determining the same, consider the intention of defendant and his wife at the time of acquiring such property and thereafter, and everything done and said by them, and such permanent improvements, if any, as were placed on said lot. The court further instructed the jury that the homestead character of the property could be fixed by the intention of the parties, coupled with placing permanent and valuable improvements thereon, and that actual occupancy was not absolutely essential. The jury answered that the property was homestead. Plaintiff asked the court to instruct the jury peremptorily to find in its favor for its debt and for foreclosure of lien to secure the same, which request the court refused as to foreclosure of lien. Plaintiff excepted to the charge of the court on the issue of homestead and to the refusal of the court to give its requested peremptory instruction, and complained of all of the same by proper assignments of error on appeal.

The Court of Civil Appeals set aside the judgment of the trial court on the issue of homestead, and held that the undisputed evidence showed that such property was not homestead at the time of the contract between plaintiff and defendant, and on such holding rendered judgment foreclosing the materialman's lien to secure the money judg-

ments recovered herein by both plaintiff and intervener.

[3] The contract by which the plaintiff agreed to furnish all the material necessary for the erection of said apartment house was verbal. There was no express agreement for lien to secure payment for the material so furnished. The transaction being between the materialman and the owner, the Constitution and laws of this state gave such lien unless the property was homestead at the time of making the contract. Swope v. Stantzenberger, 59 Tex. 387, 388, 389; West End Town Co. v. Grigg, 93 Tex. 455, 456, 457, 56 S. W. 49; F. & M. Nat. Bank v. Taylor, 91 Tex. 78, 80, 81, 85, 40 S. W. 876, 966.

[4] There is no contention that the property in San Antonio owned by Mrs. Mitchell and actually occupied by her and her husband and children did not constitute a homestead under our Constitution and laws at and prior to the acquisition by defendant of the lot in Eastland. Defendant does not contend that he was entitled to two different residence homesteads at the same time. The gist of his contention is that the intent of himself and his wife to vacate said property at San Antonio at some future time and to improve and occupy the Eastland property as a home, coupled with steps toward carrying such purpose into effect, divested the San Antonio property at once of its homestead character, notwithstanding they continued to own and occupy the same, and immediately impressed the Eastland property with such character. The authorities in this state are against such contention. Abandonment of an existing homestead in actual use is a condition precedent to the acquisition of another homestead separate and apart from the former. Such abandonment cannot be accomplished by mere intention. There must be a discontinuance of the use of the former homestead, coupled with an intention not to again use it as such. Without such abandonment no right to establish a separate and distinct homestead on other property exists. Archibald v. Jacobs, 69 Tex. 248, 251, 6 S. W. 177; Johnston v. Martin, 81 Tex. 18, 20, 21, 16 S. W. 550; O'Brien v. Woeltz, 94 Tex. 148, 154, 58 S. W. 943, 59 S. W. 535, 86 Am. St. Rep. 829; Sharp v. Johnston (Tex. Sup.) 19 S. W. 259; Powers v. Palmer, 36 Tex. Civ. App. 212, 81 S. W. 817, 818 (writ refused); Allen v. Whitaker (Tex. Civ. App.) 27 S. W. 507, 508; Pierce v. Langston (Tex. Civ. App.) 193 S. W. 745, 747.

[5] The ownership of the San Antonio property continued until it was conveyed away by deed on the 16th day of March, 1920. The actual use of the same continued without interruption until the execution of said deed, and for some time thereafter. Plaintiff's contract to furnish to or procure for defendant all the material necessary to construct the improvements on the lot involved in this suit was made in the latter part of January, 1920. The major part of such material was furnished before the execution of the deed to the San Antonio property. All the material furnished subsequent to the execution and delivery of such deed was furnished in performance of said original contract, and the lien attached as of the date thereof, and was superior to any right of exemption subsequently acquired by defendant. Swope v. Stantzenberger, 59 Tex. 387, 390, 391.

Defendant contends that the property involved in this case was a business homestead, and that, there being no written contract, no lien in favor of plaintiff or intervener could or did attach.

[6] Defendant's pleadings on the question of homestead were very general. He alleged that he was the head of a family, and entitled to both a residence and business homestead in Eastland. He alleged facts in that connection, tending to show that the property had been intended for and subsequently used as a residence homestead. No facts were alleged tending to show that said property was being prepared for use as a business homestead. There was no allegation that defendant had or pursued a calling or business and that said property was adapted for use as a place to pursue the same and reasonably necessary for such purpose. There was evidence that one room on the ground floor of said apartment house was suitable for use as a store or business house.

The Constitution defines a business homestead as "a place to exercise the calling or business of the head of the family."

Our Supreme Court, in the case of Shryock et al. v. Latimer, 57 Tex. 674, 677, stated the requisite conditions to constitute property a business homestead as follows:

"To preserve the place of business, which is separate and distinct from the home, as a part of the homestead, two things must concur: (1) The head of a family must have a calling or business to which the property is adapted and reasonably necessary. (2) Such property must be used as a place to exercise the calling or business of the head of the family."

After discussing what constitutes a "calling" and what constitutes a "business" within the meaning of these terms as used in the Constitution, the court in the opinion in that case said:

"The 'calling' may exist as a fact, whether it be practiced or not; with the other, the actual employment in the given occupation furnishes the only means to determine whether the 'business' exists or not. With the one as well as with the other, the use of the property in the calling or business of the claimant is essential to preserve the exemption after a sufficient designation has been made. * * * "The law no more protects a man in a place to do business which he is not doing, and not making immediate preparation to do, than it protects to a man a place for a home which is

not in fact home, or in reference to which no steps have been taken to make it a home for the family. The law protects the place of business because it is the place of business, which cannot be unless the head of the family is occupied in a business to which the property is adapted and reasonably necessary."

[7] To impress property with the qualities of a business homestead, the head of the family claiming the same must not only intend to dedicate the same as a place to exercise his calling or business, but must actually occupy it for such purpose, or must take such steps toward preparing the same for such use as are reasonably necessary to give notice of his intention to so use and occupy such property. Archibald v. Jacobs, supra, 69 Tex. 252, 6 S. W. 177.

There being no allegation by defendant that he had or followed any particular calling or business, that said house was adapted and reasonably necessary thereto, and that he intended and was preparing to use such house, when completed, as a place in which to exercise such calling or business, we do not think his pleadings raised an issue of business homestead. It is therefore unnecessary to review the evidence on the subject or to determine whether defendant could have the residence part of his homestead in San Antonio and the business part thereof in Eastland at the same time.

[8] Defendant insists that the Court of Civil Appeals, having set aside the verdict of the jury, finding said property homestead, erred in rendering judgment foreclosing said liens, instead of remanding the cause to the trial court for another finding by the jury on such issue.

The authority of the Courts of Civil Appeals to render final judgments in causes wherein they have reversed the judgments of the trial court is found in article 1626 of the Revised Statutes, which reads as follows:

"When the judgment or decree of the court below shall be reversed, the court shall proceed to render such judgment or decree as the court below should have rendered, except when it is necessary that some matter of fact be ascertained or the damage to be assessed or the matter to be decreed is uncertain, in either of which cases the cause shall be remanded for a new trial in the court below."

The conditions under which such authority may be properly exercised are stated by our Supreme Court in Stevens v. Masterson, 90 Tex. 417, 424, 39 S. W. 295, as follows:

"Is the evidence in this case such as would authorize a district judge to instruct the jury to find for the plaintiff in the case? If it is, then the Court of Civil Appeals might render judgment instead of remanding the cause."

The claim of homestead asserted by plaintiff in his pleadings was based on his intent and purpose to use said apartment house when completed as a place of residence for himself and family. The evidence shows conclusively that he, at the time he made the contract sued on by plaintiff, for material and supplies to erect said house, had a homestead in the City of San Antonio and that his family were actually occupying the same. Under this state of the evidence the court should have instructed a verdict against him on such issue, and the Court of Civil Appeals, on reversing the judgment of the trial court, had authority to render judgment against him as it did do. Stevens v. Masterson, supra; Taylor v. Dunn, 108 Tex. 337, 193 S. W. 663; Underwood v. Jones, 95 Tex. 121, 65 S. W. 480.

We therefore recommend that the judgment of the Court of Civil Appeals in so far as it reverses the judgment of the trial court in favor of Clem Lumber Company against the Elliott Lumber Company be set aside, and that the judgment of the trial court on that issue between said parties be affirmed, and that the judgment of the Court of Civil Appeals be in all other respects affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reformed and affirmed in accordance with the recommendation of the Commission of Appeals.