## BLACKBURN et ux. v. TEMPLE NAT. BANK.

### No. 9744.

Court of Civil Appeals of Texas. Austin.
Dec. 8, 1948.

Rehearing Denied Dec. 31, 1948.

Andress & Ramsey, of Dallas, for appellants.

Cox, Brown & Daniel, of Temple, for appellee.

GRAY, Justice.

Appellee, Temple National Bank, Temple, Texas, sued appellants, Roy Blackburn and wife, on a mechanic's and materialman's lien note and for foreclosure of the lien securing its payment.

The note sued on is for the principal sum of $10,864, it was executed by appellants, is dated March 5, 1946, and is payable to J. F. Hudson, or order, on or before 90 days after date, with interest from maturity at 6 per cent per annum. It recites it was given in full payment for the construction of improvements on Lot 14, of Block 1 of the J. K. Campbell Addition to the City of Temple. The note provides for the optional maturity of the entire indebtedness upon named defaults of the makers, or upon total or partial destruction of the improvements, and contains the usual contingent 10 per cent attorney's fee clause. Of even date with the note appellants entered into a mechanic's and materialman's lien contract with J. F. Hudson, as the contractor, for the construction of named improvements on the above lot.

On May 4, 1946, J. F. Hudson endorsed the note to appellee and executed a separate collateral agreement in its favor for advancements and thereby "pledged, transferred and delivered" said note and lien to appellee. A total of $7,000 was advanced to J. F. Hudson. Mr. E. F. Lanham, appellee's representative who handled the transaction with Hudson, testified there were three notes given by Hudson which were all connected with this transaction, and that the money was advanced to him at different "stages." These notes are not in evidence and the dates of the advancements are not shown except "some money" was advanced to Hudson on May 4, the date of the assignment.

J. F. Hudson died July 12, 1946, without having completed the improvements. At the time of his death, Hudson had on deposit with appellee $1,212.66, which sum was credited by appellee on one of his three notes.

Lot 14 of Block 1 of the Campbell Addition was acquired by appellants March 5, 1946, and was then an unimproved lot. On this date appellants owned, used and occupied, as their home, property in the city of Temple which was separate and apart from this lot.

Upon a non-jury trial, the court rendered judgment for appellee for $5,787.34 (being for $7,000 advanced to Hudson, less $1,212.34 applied on his indebtedness), together with interest and attorney's fees, or a total of $7,007.95, and for foreclosure of the mechanic's lien to the extent of $3,283.72, with interest and attorney's fees as provided for in the note, this latter sum being the contract price for the improvements, less the sum of $6,693, the amount found by the court as necessary to complete the improvements, and less the further sum of $887.28 expended by appellants toward completion of said improvements.

Appellants complain of this judgment by five assignments of error. By their second assignment appellants say that by the purchase of the lot in controversy with the avowed intention of erecting their homestead on it and the simultaneous execution of a mechanic's lien contract for the construction of such home, the lot became a portion of their homestead and the lien contract is not valid unless substantially performed.

■ The trial court found, correctly we think, that the lot in controversy was not a part of appellants' homestead. It is true unimproved property may become impressed with the homestead exemption during the interval of time between its purchase and actual occupancy, but that is when the parties do not then own another homestead, such is not the fact situation here presented. At the time Lot 14 was purchased by appellants, that being the date of the execution of the note and lien contract in controversy, appellants owned and then used and occupied, as their home, property located at 908 North 4th Street, Temple, Texas, which property was separate and apart from Lot 14. This property was subsequently sold (date of such sale not shown) and appellants then lived in rented property until on or about December 25, 1946, when they moved on Lot 14 where they have since resided. While the existence or nonexistence of appellants' homestead rights on Lot 14 are to be here determined as of the date of the execution of the note and lien contract in controversy, the facts compel the question be answered adversely to their contention. Appellants did not abandon the property at 908 North 4th Street as their home until some time subsequent to their purchase of Lot 14, and until they did so abandon this property, they could not legally establish their homestead exemption on property separate and apart from it. Clem Lumber Co. v. Elliott Lumber Co., Tex.Com.App., 254 S.W. 935.

■ The question of substantial performance of the lien contract is later referred to in this opinion. We think, however, this question is of importance here because even though an innocent holder of a negotiable instrument pledged as collateral security is protected to the extent of the indebtedness secured and existing prior to maturity of such instrument, yet if the instrument is subject to defenses as against the original payee the burden rests upon such holder to show: the secured debt has not been paid, the amount due thereon, what, if any, other

security is held to secure payment of the debt, and that a necessity exists for collection of the debt out of such collateral security in order to protect the holder from loss. When such proof is made the recovery must be so limited. Iowa City State Bank v. Friar, Tex.Civ.App., 167 S.W. 261; Livestock State Bank v. Locke, Tex.Civ. App., 277 S.W. 405, Er.Ref.; City Nat. Bank of Galveston v. Pearce, Tex.Civ.App., 291 S.W. 291.

By their first assignment appellants present that because the lien contract was not substantially performed, no lien exists thereunder and recovery must be limited to quantum meruit; by their third assignment, that the note is not negotiable because of the optional maturity clause, and by their fourth, that if the note is negotiable appellee is an innocent purchaser for value only as to the amounts advanced prior to maturity of the note.

The several propositions involved in these assignments are discussed by our Supreme Court in its recent opinion in Continental Nat. Bank of Fort Worth v. Conner, Tex. Sup., 214 S.W.2d 928. Opinion dated November 10, 1948, but not yet reported. We need only to refer to that opinion and here decide these assignments in accordance with the law as there announced.

 The note sued on being a negotiable instrument, appellee is a holder in due course to the extent of advancements made to J. F. Hudson prior to its maturity, and is entitled to foreclose the lien to that extent. As to any advancements made after maturity, recovery must be limited to the extent that Hudson himself could have recovered against appellants, and if the evidence shows the contract was not substantially performed, such recovery would be in personam only.

Appellants' fifth assignment complains that appellee is not entitled to recover interest and attorney's fees but can recover only its own loss. In addition to what we have already said, the note and lien contract were pledged to appellee by J. F. Hudson, the payee of the note, as security for advancements made and to be made to him. These advancements were made at different times and are evidenced by three notes. These notes are not in evidence and the amounts, terms and conditions thereof are not shown, whether they bear interest or provide for attorney's fees is therefore not known to us. In any event appellee can recover interest and attorney's fees only if provided for in the notes evidencing the indebtedness of Hudson for which the note and contract lien sued on were pledged as security. Bruyere v. Liberty Nat. Bank of Waco, Tex.Civ.App., 262 S.W. 844.

We are convinced there is error in the judgment of the trial court for the reasons herein stated and that this cause should be reversed and remanded for further proceedings consistent with this opinion. We, therefore, reverse the judgment of the trial court and remand this cause for another trial.

Reversed and remanded.