**Frank A. FLOYD et al., Appellants,**

v.

**David RICE et al., d/b/a Hub Supply, Appellees.**

**No. 7059.**

Court of Civil Appeals of Texas.
Beaumont.
Sept. 4, 1969.
Motion for Rehearing Overruled
Sept. 25, 1969.

James E. Faulkner, Coldsprings, for appellants.

Robert D. Atkins, Coldsprings, for appellees.

STEPHENSON, Justice.

Plaintiffs, David Rice and R. E. Meekins, d/b/a Hub Supply, brought this action against defendants, Frank A. Floyd, C. L. Pollard and Ruben Polk, for debt and to foreclose a statutory materialmen's lien against a tract of land located in San Jacinto County. Trial was by jury, and judgment was rendered for plaintiffs upon the issues. Plaintiffs recovered judgment against C. L. Pollard and Ruben Polk in the amount of $2,282.22, and against Frank Floyd in the amount of $1,400.00 (10% of the contract price) and for foreclosure of plaintiffs' lien. It was undisputed that Frank Floyd paid the contract in full, but did not withhold 10% of the contract price for 30 days as provided in Article 5469, Vernon's Ann.Civ.St. The parties will be referred to here as they were in the trial court.

Plaintiffs alleged in their petition the following: That defendant, Frank A. Floyd, as owner, and defendants, C. L. Pollard and Ruben Polk, as contractors, entered into an agreement to build a house. That plaintiffs furnished certain materials that were used in the construction of such house. That plaintiffs had not been paid for such material. That plaintiffs had perfected their lien under Article 5452 et seq., V.A.C.S. Defendants all filed pleas in abatement alleging the property involved to be the homestead of Frank A. Floyd and his wife, and complaining of the failure of plaintiffs to make the wife a party to this suit. Defendants also filed general denials and plead in bar that this property was a homestead.

The jury made the following findings: That C. L. Pollard and Ruben Polk purchased the materials sued for. That the materials were used in the Frank A. Floyd home. That C. L. Pollard and Ruben Polk owe plaintiffs $2,282.22. The jury failed to find this property was the homestead of defendant, Frank A. Floyd, and intended as such before any contract was entered into or any material furnished or labor done.

Defendants have eleven points of error, most of which do not comply with Rule 418, in that they are both general and multifarious. We will consider these points of error as raising questions of no evidence and insufficiency of the evidence as to the findings by the jury. In passing upon the no evidence points, we will consider only the evidence favorable to the findings of the jury, and in passing upon the sufficiency of the evidence points, we will consider the entire record. These points of error are overruled.

We have concluded this case is controlled by the law as stated in Clem Lumber Co. v. Elliot Lumber Co., 254 S.W. 935 (Com. App., 1923). There is little dispute as to the basic facts in this case. Defendant, Frank Floyd, testified to the following: He entered into a written contract December 1, 1966 (a copy was introduced in evidence) with defendants, Ruben Polk and C. L. Pollard, to build him a home in San Jacinto County. He moved into the home

in San Jacinto County April 1, 1967. That he owned a home in Houston, Texas, where he lived for three years prior to April 1, 1967. He later testified he sold the home in Houston and rented for about three months before he moved to San Jacinto County. All of the evidence shows that Frank Floyd and his wife owned a home in which they were living in Houston, Texas, on December 1, 1966, when the contract was signed with defendants, Polk and Pollard, to build the San Jacinto County home. Even though Frank Floyd testified the land in San Jacinto County was a part of the old Floyd Estate and he was born and reared on it and he had cleared the land and it was his intention to make this his homestead, long before the contract was signed, these facts do not conclusively establish the San Jacinto County property as his homestead on the date the contract was signed.

 It is a well-settled rule of law that Frank Floyd and wife could have but one residence homestead on December 1, 1966, and that once a homestead had been acquired by actual occupancy, it could be abandoned in no other way than moving therefrom with the intention to abandon the same as a home. Jefferson County Investment & Bldg. Ass'n. v. Gaddy, 90 S.W.2d 295, 298 (Beaumont, Tex.Civ.App., 1936, error ref.) and cases therein cited. Mere intention to abandon the homestead is insufficient, Gaddy, supra, at p. 299. The rule is stated in Towery v. Plainview Bldg. & Loan Ass'n., 99 S.W.2d 1039, 1041 (Amarillo, Tex.Civ.App., 1936, error ref.):

"As we understand the law, it is: 'Where no homestead dedicated by actual occupancy exists, effect may be given to ownership, intention and preparation to use for a home, * * *' *but when there is a home in fact, such home cannot be 'abandoned while actually used as the home of the family,* and another homestead acquired by intention at sometime in the future to use it as a home, ac-companied with preparation to so improve it, as to make it suitable for such a use.' Pierce v. Langston (Tex.Civ.App.) 193 S.W. 745, 747.

"This holding is supported by an unbroken line of authorities. [Citations omitted.]" (Emphasis supplied.)

See also, Blackburn v. Temple Nat. Bank, 216 S.W.2d 233 (Austin, Tex.Civ.App., 1948, error ref. n. r. e.); Savell v. Flint, 347 S.W.2d 24 (Eastland, Tex.Civ.App., 1961, error ref. n. r. e.); Morris v. Porter, 393 S.W.2d 385 (Houston, Tex.Civ.App., 1965, error ref. n. r. e.). The fact that Frank Floyd sold the Houston, Texas home about January 1, 1967, and the San Jacinto property may have become his home on that date, this does not defeat plaintiffs' lien for the material furnished. This is true even though most of the material was furnished after January 1, 1967, the date the San Jacinto County property may have become Frank Floyd's homestead. The facts of the Clem Lumber Co. Case, supra are surprisingly similar to those of this case. There the contract was made at a time a first homestead was owned and occupied although it was clearly the intention to make a house under contract a homestead, and the first homestead was sold during such construction. The Commission of Appeals held the lien attached on the date the contract was made, even though the house under contract became a homestead before construction was completed.

 Justice Norvell's opinion for the Supreme Court in McConnell v. Mortgage Investment Co. of El Paso, 157 Tex. 572, 305 S.W.2d 280 (Tex.Sup., 1957), does an excellent job of explaining the "related back" doctrine as it exists in this state. We think it is now clear that a mechanics' and materialmen's lien has its inception, and relates back to the date that the contract is signed, rather than the dates the labor is performed or materials furnished. See cases cited.

Affirmed.