**In re Donald Leroy BURNETT and Betty Louise Burnett, Debtors.**

**Bankruptcy No. 588–50148–7.**

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Nov. 20, 1990 [1].

1. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 which is made applicable to Contested Matters by Bankruptcy Rule 9014.

**840**

Larry Glazner, Levelland, Tex., for Burnetts.

Nancy Koenig, Asst. U.S. Atty., U.S. Dept. of Justice, Lubbock, Tex., for FmHA.

David Langston, McWhorter, Cobb & Johnson, Lubbock, Tex., Chapter 7 Trustee.

## MEMORANDUM OF OPINION ON MECHANIC'S LIEN

JOHN C. AKARD, Bankruptcy Judge.

Donald Leroy Burnett and Betty Louise Burnett (Burnetts) filed a motion to avoid a lien held by the Farmers Home Administration (FmHA). The dispute is whether a Development Plan which was expressly incorporated into a deed of trust created a valid contract for a mechanic's lien on the Burnett's homestead.[2] Finding that the lien is valid, the court denies the Burnetts' motion.

### FACTS

On April 13, 1973, the Burnetts and FmHA agreed to a Development Plan which provided for the construction of a grain storage barn at a cost of $18,000.00 on the Burnetts' homestead. The barn was described as a 140′ × 100′ × 17′, Series 420 GR Wonder Bldg. erected on a concrete slab. J & J, Inc. did the construction with the FmHA providing the financing.

On June 20, 1973, the Burnetts signed an $18,000.00 note payable to the FmHA and executed a deed of trust on their homestead to secure the note. The deed of trust set out the $18,000.00 principal amount of the loan, the annual rate of interest, and the due date for the final installment payment on the note. Paragraph twenty-five (25) of the deed of trust stated:

> IT IS AGREED by and between Borrower and the Government that the Government will, for the sum of $18,000.00, erect, construct, complete and repair buildings or other improvements upon, and will furnish all labor and material necessary for the purpose of making such repairs and improvements upon said property as are described in the Development Plan agreed to in writing by Borrower and the Government and made a part hereof and incorporated herein by reference, except labor to be performed by Borrower; to secure which sum Borrower hereby gives and creates a valid constitutional and contractual lien on said property; and that if said sum is not actually expended for such repairs and improvements, any amount not so expended shall be credited on the indebtedness evidenced by the note. It is further agreed that a failure to complete said repairs and improvements, or failure to complete same according to said Development Plan, shall not defeat said indebtedness and lien, but in such event said indebtedness and lien upon said property shall exist in favor of the Government or its assigns for the amount herein agreed upon, less such amount as would be reasonably necessary to complete said repairs and improvements according to said Development Plan.

Thereafter, the materials were provided and the barn constructed. On September 10, 1973, the Burnetts and a representative of the FmHA signed a Final Inspection Report stating that the barn was completed in accordance with the plans and specifications. On March 11, 1988 the Burnetts

---

**2.** The Burnetts' filed their motion May 7, 1990. It did not seek to utilize any of the avoiding powers contained in the Bankruptcy Code. Instead it described the Texas Constitution and statutes on homestead exemptions and asserted that the lien impaired the exemption to which the Burnetts are entitled under § 522 of the Bankruptcy Code. The lien avoidance provi-

sions of § 522(f) does not cover the Burnetts' action. This proceeding should have been brought as an adversary proceeding to determine the extent and validity of a lien. *See* Bankruptcy Rule 7001(2). However, the FmHA did not object to the procedure, so the lien validity issue was tried by consent.

filed a petition for relief under Chapter 7 of the Bankruptcy Code.[3]

## CONSTITUTION AND STATUTES

Tex. Const. art. 16, § 50 (Vernon Supp. 1990) states:

The homestead of a family ... shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of both spouses, in the case of a family homestead, given in the same manner as is required in making a sale and conveyance of the homestead.... No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided....

Tex.Prop.Code Ann. § 53.059 (Vernon 1984) states:

(a) To fix the lien on a homestead, the person who is to furnish material or perform labor and the owner must execute a written contract setting forth the terms of the agreement.

(b) The contract must be entered before the material is furnished or the labor is performed.

(c) If the owner is married, the contract must be signed by both spouses.

(d) The contract must be filed with the county clerk of the county in which the homestead is located....

(e) If the contract is made and recorded by an original contractor, the contract inures to the benefit of all persons who labor or furnish material for the original contractor.[4]

## POSITIONS OF THE PARTIES

The Burnetts argued that no valid contract for improvements on the homestead existed because the deed of trust, which was the only document filed of record, did not contain all of the essential elements of a contract as required by Tex.Prop.Code Ann. § 53.059. FmHA argued that since the Development Plan was incorporated into the deed of trust, the documents taken together meet the statutory requirements for a valid mechanic's lien on the Burnetts' homestead.

## DISCUSSION

### *Validity of the Contract*

The parties entered into the Development Plan before any material was furnished to build the barn. Mr. and Mrs. Burnett signed both the Development Plan and the deed of trust. The deed of trust was filed of record in Parmer County, Texas, where the homestead was located.

■ In Texas, a lien on the homestead is valid only if it strictly complies with the state's Constitution and statutes. *In re Miller*, 58 B.R. 192 (Bankr.S.D.Tex.1985). The Burnetts argued that the deed of trust did not contain the necessary terms for a valid mechanic's lien, in that the FmHA did not sign it, the time and manner of payment were not set forth, and it contained no description of the material supplied or the work to be performed. The Burnetts rely on *Walker v. Woody*, 40 Tex.Civ.App. 346, 89 S.W. 789 (1905, *writ ref'd*) which held that a contract for improvements may be incorporated into a deed of trust, but only where the deed of trust contained "the essential ingredients of the contract contemplated by the Constitution...." *Id.* at 791. The *Walker* lien was invalid for three reasons: the wife was not a party to the contract, the deed of trust did not recite that a contract for improvements existed, and the deed of trust did not express any consideration.

---

**3.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

**4.** The court notes that although the legislature enacted this section after the transaction in question, it is materially the same as the 1973 statute. *See* Vernon's Tex.Ann.Civ.St. art. 5460.

The deed of trust in this case did not suffer from those flaws. It recited the date of the instrument, the principal amount of the loan, the annual interest rate, the due date of the final payment, and a description of the property on which the improvements are situated. Further, in paragraph twenty-five (25), the deed of trust stated that the parties agreed to a contractual mechanic's lien. This paragraph established a contract for improvements to the homestead and expressly incorporated the terms of the Development Plan to which the parties agreed. This deed of trust meets the test for incorporation set out *Walker, supra.*

In *Lipscomb v. Adamson Lumber Co.,* 217 S.W. 228, 230 (Tex.Civ.App.1919, *no writ*) the court held valid a mechanic's lien on the homestead stating:

> [Where the contract provides that] material of ... agreed value ... is to be delivered ... for use in erecting, repairing and improving the homestead, fixes the time of payment, the rate of interest to be paid, confesses and grants a lien to secure payment thereof, and describes the land upon which the improvements are to be situated.... Obviously it would be proper to show by parol testimony the quantity, pieces, or articles agreed on, and that they were thereafter actually delivered as the contract contemplated they would be, without affecting the force or validity of the lien.

*See also Hughes v. Grogan–Lamm Lumber Co.,* 331 S.W.2d 799 (Tex.Civ.App.—Dallas 1960, *writ ref'd n.r.e.*); *Standard Savings & Loan Ass'n v. Davis,* 85 S.W.2d 333 (Tex.Civ.App.—Amarillo 1935, *writ ref'd*) (both upholding mechanic's liens under substantially the same fact situations as *Lipscomb*). These cases are directly on point in the present case. The elements held necessary for a valid lien in those cases are present in the deed of trust in this case.

The only elements of the contract not contained in the deed of trust are the exact materials and amounts thereof, specifications and signature of the FmHA. The Burnetts point to *Walker* for authority that

the materials need to be expressed in the contract. However, both *Walker* and another case the Burnetts cited, *Gomez v. Riddle,* 334 S.W.2d 197 (Tex.Civ.App.1960, *no writ*), held that the exact materials to be used as well as their amounts could be incorporated into the deed of trust or proved by parol. In the instant case, the materials and specifications were properly incorporated into the deed of trust by the Development Plan.

Although the deed of trust was not signed by the FmHA, the FmHA's local representative signed the Development Plan. The Development Plan evidenced the parties' intent to contract for improvements on the Burnetts' homestead. Therefore, the Development Plan met the requirements of the Statute of Frauds, and, together with the deed of trust, contained the essential ingredients contemplated by Tex.Prop.Code Ann. § 53.059 (Vernon 1984). Furthermore, it would have served no legal purpose had FmHA signed the lien document.

### Use of the Improvements

The Burnetts argued that improvements must be used reasonably and fairly in connection with the homestead or the lien is invalid. In support of this argument, the Burnetts pointed to *Atwood v. Guaranty Construction Co.,* 63 S.W.2d 685 (Tex. 1933). In that case Mr. Atwood decided to divide his homestead and build rent houses on the west portion. The construction company purported to have a mechanic's lien on the entire homestead. The court held that in order for a valid lien to attach to the homestead, the use of those improvements had to be consistent with the use and enjoyment of the homestead. The court stated that when Mr. Atwood segregated the western portion of the parcel for rental use, he abandoned that portion of the tract as homestead. Since that land was no longer homestead, any improvements on it were not secured by a mechanic's lien on the homestead portion.

■ *Atwood* is distinguishable on its facts. The Burnetts claimed that the land and barn is now used in connection with

Mr. Burnett's mother's farm and that this use is inconsistent with their homestead. A mechanic's lien has its inception and relates back to the date that the contract was signed. *Floyd v. Rice,* 444 S.W.2d 834 (Tex.Civ.App.—Beaumont 1969, *writ ref'd n.r.e.*). Therefore, the validity of the mechanic's lien is determined at that time. *Atwood* did not hold that a change in use after the inception of the lien would invalidate the mechanic's lien. In *Atwood* the portion of the homestead on which the improvements were built was abandoned at the time the mechanic's lien was fixed. The Burnetts did not segregate the parcel on which the barn stood from their homestead at the time they executed the contract for the improvements. Apparently the barn was used in connection with the Burnett's farming operation when it was built. Therefore, *Atwood* is inapplicable to the instant case.

Furthermore, Mr. Burnett's testimony indicated that the use of the barn was consistent with his homestead. Mr. Burnett stated that he used the barn to store grain from his family farming business. His mother paid him "so much a month" for managing the custom farming operation. Clearly, the use of the barn benefited the family farming business.

On their bankruptcy schedules, the Burnetts claimed the land on which the improvements are located as homestead. In fact, the Burnetts' motion to avoid lien stated that the 10 acres upon which the barn is located was "used and claimed as homestead." The Burnetts cannot claim this property as homestead for the purposes of bankruptcy and at the same time claim that its use is inconsistent with their homestead for the purpose of lien avoidance. The court finds that the use of the barn is consistent with the Debtors' use of the property as homestead.

## CONCLUSION

Since the contract between the Burnetts and FmHA contained the essential contractual elements required by the Texas Constitution and statutes and the use of the improvements is consistent with the use of the Burnetts' homestead, the court concludes that the FmHA has a valid mechanic's lien.

ORDER ACCORDINGLY.